## 8504

### MOORE v. NORTH AND SOUTH CAROLINA RY. CO.

1. RAILROADS — RIGHTS OF WAY — DEED — TRESPASSER — WILFULNESS.— Where a deed for right of way is executed under an agreement that it should not be effective until the consideration therein expressed should be paid, an entry thereunder before payment of consideration, is a trespass and under the facts of this case the jury was warranted in finding the trespass high-handed and malicious.

2. IBID.—IBID.—TRESPASS.—Where a railroad company enters lands of another for the purpose of construction without notification *in writing* that the right of way was needed, the landowner is not required to notify the corporation *in writing* of his refusal of consent under section 3292 of Code, 1912, but oral objection is sufficient, and entry thereafter is a trespass.

3. IBID.—IBID.—IBID.—Where such corporation takes a conveyance of a right of way, to enter and construct on any part of grantor's land and before execution of deed a survey is made, and the deed is executed under the belief that the location would be made on the then survey, of which belief the grantee had notice, an entry and location at another place, without consent of landowner, is a trespass. *Tompkins* v. *R. R.*, 37 S. C. 382, *overruled in part.*

Before WILSON, J., Dillon, March, 1912. Affirmed.

Action by J. A. Moore against North and South Carolina Railway Company.   Defendant appeals.

*Messrs. Gibson & Muller* and *Stevenson & Prince,* for appellant.   *Messrs. Gibson & Muller* cite: *Entry under the deed was not a trespass:* 13 Rich. L. 85; 2 Hill 439; 52 S. C. 111; 46 S. C. 439.   *Plaintiff's remedy is under the statute:* 62 S. C. 56; 33 S. C. 216.   *No recovery here for wilfulness:* 78 S. C. 419.

*Messrs. Stevenson & Prince* cite: *Objection to entrance should be made in writing:* 33 S. C. 217; 37 S. C. 386; 58 S. C. 534; 62 S. C. 56; 69 S. C. 516.   *Deed was a license to enter:* 32 S. C. 428.   *No ground for punitive damages:* 78 S. C. 421; 61 S. C. 306.   *Estate already granted cannot be limited by subsequent conditions:* 2 Black. 152, 154; 4 Id. 132; McCall on Real Prop. 100; 46 S. C. 229; 48 S. C. 283; 48 S. C. 283, 317; 2 Strob. Eq. 101; 91 S. C. 59; 52 S. C. 119; 13 Rich. L. 85; 79 S. C. 442.   *Deed cannot be construed according to construction of grantor:* 72 S. C. 260; 24 S. C. 450; 69 S. C. 99; 79 S. C. 137.

*Messrs. M. C. Woods* and *J. W. Johnson,* contra, cite: *As to construction of deed:* 23 S. C. 232; 89 S. C. 328; 80 S. C. 106.   *Defendant entered under an implied license:* 37 S. C. 387; 62 S. C. 56; 74 S. C. 298.   *An allegation of negligence is not proper in an action for wilful trespass:* 78 S. C. 421.   *Notice to and objection of landowner to entrance:* 33 S. C. 216; 58 S. C. 537; 62 S. C. 56; 38 S. C. 308; 59 S. C. 376; 71 S. C. 244; 72 S. C. 382; 76 S. C. 98. *Effect of addenda to deed:* 79 S. C. 442.

April 3, 1913.   The opinion of the Court was delivered by

Mr. Justice Hydrick.   This was an action for damages for malicious trespass on land.   Plaintiff alleged, in sub-

stance, that defendant entered upon his land and constructed its railroad across it, without license or right to do so, and against his prohibition. Defendant sought to justify the entry and alleged trespass under plaintiff's grant to it of a right of way across his land.

The evidence shows that the citizens of Dillon, desiring defendant to extend its railroad through their town, held a mass meeting and agreed with defendant to pay for the necessary rights of way, and appointed a committee to obtain deeds to the same; that Dr. Stackhouse, a member of the committee, approached plaintiff, whose lands lie just outside the limits of the town, and procured his signature to a deed, granting defendant a right of way across his land, which had been surveyed and subdivided into blocks and town lots. The consideration expressed in the deed is "$1,000 per block or whatever fractional part of block this 30 feet right of way covers ($1,000) cash in hand paid." At the date of the execution of the deed, a right of way had been surveyed and staked off through the plaintiff's lands, which plaintiff testified he thought was the right of way which his deed was intended to convey, though defendant's testimony was that that was only a preliminary survey. Plaintiff's deed, however, describes the right of way conveyed as follows: "A strip extending 15 feet on each side of and at right angles to the center of the track or roadbed of the railway as the same may be located and established by the party of the second part upon and over any of the lands of the party of the first part, situate in said county and State."

Before the deed was executed, plaintiff objected to signing it, on the ground that the consideration had not been paid; whereupon, Dr. Stackhouse assured him that the deed would not take effect, until that was done, and wrote at the foot of it, but below the plaintiff's signature to the deed, the following: "This agreement not to become binding till consideration is paid." Thereupon plaintiff signed the deed,

and delivered it to Dr. Stackhouse, who, in turn, delivered it to Mr. W. M. Hamer, another member of the committee, to be kept for defendant. Several hours afterwards, it occurred to plaintiff that, by the terms of the deed, defendant might have the right to go through his land at any place. He went immediately to see Dr. Stackhouse, who told him that the deed was in the hands of Mr. Hamer. He then went to Mr. Hamer, and asked that the deed be changed, so as to make it plain that the right of way intended to be conveyed was that shown on a plat which had been exhibited to him by Dr. Stackhouse. Mr. Hamer told him that he had no authority to make any alteration in the body of the deed, but wrote at the foot thereof and below plaintiff's signature thereto, the following: "The above was signed by me with understanding it was to go as per map shown me by Dr. Stackhouse." Plaintiff signed this statement, in the presence of Mr. Hamer, and left the deed with him. The consideration was never paid or tendered. Dr. Stackhouse testified that defendant was to pay for the rights of way, until the citizens could arrange to refund the amount paid by an issue of bonds, which, however, fell through.

The railroad was built across plaintiff's land at an entirely different place from that which had been surveyed and staked off when the deed was executed, and it was run through a much more valuable portion of the tract, so that it injured the value of the property much more than it would have done, if it had been built on the route located, when the deed was executed.

Plaintiff testified that, when he saw the construction force approaching his land at a different place from that where the right of way had been staked off, and before they had entered thereon, he objected and forbade their entry; that they promised him they would not enter, but left and went to work elsewhere, that they returned, when he was at dinner, and, taking advantage of his absence, built the railroad across his land. Defendant's testimony did not contro-

vert the plaintiff's, but it was to the effect that the work was done under the advice of defendant's attorney, which was that defendant had the right, under the deed, to build its road where it did, notwithstanding the plaintiff's objection. The jury found a verdict for plaintiff for $4,000 actual, and punitive damages, and, from judgment thereon, defendant appealed.

The defendant's entry and trespass cannot be justified under the deed, because the undisputed evidence is that the agreement of the parties, at the time of executing the deed, was that it was not to be binding, until the consideration was paid; and it is admitted that the consideration had not been paid. That defendant had notice of that agreement, is also undisputed, because it was written by its own agent, and was upon the deed under which it claimed to act. Under the evidence stated, the jury would have been warranted in finding that the trespass was high-handed and malicious.

We must overrule appellant's contention that this action cannot be maintained, because it was neither alleged nor proved that plaintiff notified defendant *in writing* of his refusal of consent that defendant should have a right of way across his land. The requirement of the statute that the landowner shall notify the corporation seeking to condemn a right of way over his land of his refusal in writing has no application to a state of facts such as appear in this case. Careful consideration of the statutes shows that the legislature never intended that the landowner should signify his refusal of consent *in writing,* except when he had been notified *in writing* by the corporation seeking to condemn a right of way over his lands that it was required. Section 3292, Civil Code, 1912, provides that, before entering upon any lands for the purpose of construction, the corporation shall give the owner thereof thirty days' notice, in writing, that the right of way over his lands is required, and if the owner shall not, within thirty days

thereafter, signify, in writing, his refusal of consent, it shall be presumed that his consent is given, and entry may be made.    It is clear that the presumption of consent which arises from the failure of the landowner to notify the corporation of his refusal of consent is predicated upon the service upon him by the corporation of notice in writing that the right of way is required.    Therefore, if the corporation fails to give the preliminary notice, in writing, which the statute requires, before it can enter upon the lands of the citizen, the latter can rest secure in his possession; and if the corporation enters upon his lands, without his consent, actual or presumed, it will be a trespasser.    The failure of the landowner to give notice in writing of his refusal of consent in response to a notice in writing of the requirement of a right of way by the corporation is, however, only one method of raising a presumption of consent.    There are others.    Where, for instance, the landowner stands by and sees the corporation enter upon the construction of a railroad upon his land, without making any objection, his consent will be presumed; or, where the corporation enters upon lands and builds its road, when the owner is unknown, or is incapable of consenting, or his right and title to the land is such that he has no immediate right to object, his consent will be presumed to the extent that the corporation shall not be held to be a trespasser, and subjected to the liabilities of a trespasser, because of its right, under the law, to condemn a right of way.    But the owner shall, nevertheless, be entitled to compensation, if he proceed according to the statute to obtain it.    But where the landowner orally forbids an entry to which he has not theretofore given his consent, actual or presumed, the corporation, entering in defiance of his prohibition, without having proceeded, according to the statute, to condemn a right of way, becomes a trespasser.

It would be a perversion of law and justice to say that a corporation can, after having obtained the consent of the

landowner to build its railroad, or other means of serving the public, over his lands at a specified place, or on an agreed route, go anywhere else on his lands that it may see fit and build, even against his most strenuous objections, the doing of which he might have been able to prevent on the ground that there was no necessity for it, if he had timely notice of the intention to do so, as required by the statute.   And to say that he must give notice *in writing* of his refusal of consent to the doing of something of which he is kept in ignorance, and, perhaps, purposely, until after it has been done, or until it is too late to object, is to deny to him the protection of the law in his rights of property, and is tantamount to depriving him of his property without due process of law.

To the extent that the case of *Tompkins* v. *R. Co., 37* S. C. 382, 16 S. E. 149, is in conflict with the foregoing views, it is overruled.

Affirmed.