## GRIFFIN v. CHARLESTON & W. C. RAILWAY CO.

### (128 S. E., 855)

1. RAILROADS—GRANT OF RIGHT OF WAY FOR SPUR TRACK HELD FOR BUT LIMITED TERM RATHER THAN PERPETUAL.—Where contract between railroad and private mill company was to remain in force for four years, and thereafter "from month to month until terminated by 30 days' notice," and where deed of right of way for spur track to mill construed contract between railroad and mill as providing for operation of spur track "for the term of five years with privilege of renewal * * * for further term of five years," *held,* term of grant was for .but ten years rather than perpetual, with right of either party to terminate.

2. RAILROADS—NONSUIT IN ACTION AGAINST RAILROAD TO RECOVER LAND USED AS RIGHT OF WAY FOR SPUR TRACK HELD UNWARRANTED. —Where railroad acquired right of way for spur track under agreements limiting its use to period of ten years, it was not, in suit against it, after expiration of such time, to recover possession of the land, entitled to nonsuit on ground that, it having entered with consent of owner, plaintiff's only remedy was by condemnation.

Before TOWNSEND, J., Greenville, September, 1923.   Reversed and new trial granted.

Action by Casper E. Griffin against Charleston & Western Carolina Railway Company.  Judgment of nonsuit and plaintiff appeals.

*Messrs. B. A. Morgan* and *J. J. McSwain,* for appellant, cite: *Private use:*   71 S. C., 485; 66 S. C., 433; 69 S. C., 176; 128 N. Y., 408; 28 N. E., 506; 4 Coldw. (Tenn.), 419. *Public use:* 4 Coldw. (Tenn.), 419. *Eminent domain:* 10 R. C. L., 7, Sec. 2. *Taking of private property:* Const. of 1895, Art. I, Sec. 17. *No condemnation for private use:* 66 S. C., 433;  20 C. J., 569 et seq.; 44 S. E., 410. *Notice sufficient to put party on inquiry:* 124 S. E., 238; 49 S. C., 454; 66 S. C., 482.

*Messrs. Dean, Cothran & Wyche* and *Haynsworth & Haynsworth,* for respondent, cite: *Leases determinable by*

*happening of contingency:* 39 A. R. (Ind.), 88; 83 Ind., 196; 55 So., 565; 7 Pick., 169; 68 Minn., 177; 70 N. W., 980; 197 Mass., 283; 84 N. E., 96; 17 N. J. Eq., 356; 119 N. W., 797. *Presence of railway construction notice of right of way:* 105 S. C., 319; 72 S. C., 228; 47 S. C., 485; 79 S. C., 281; 72 S. C., 228; 105 S. C., 319. *Right of way consented to by owner not recoverable:* 15 S. C., 476; 21 S. C., 420; 86 S. C., 267. . *Right of way not defeated by defect in deed:* 89 S. C., 555; 69 S. C., 481; 111 S. C., 115. *Spur track held public use:* 208 U. S., 598; 233 U. S., 211.

July 27, 1925.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE R. O. PURDY.

The respondent states its case as follows:

This is an action to recover from the railway company possession of a strip of land upon which is constructed a spur track leading from its main line at Simpsonville to the Woodside Cotton Mills, and also for damages for withholding said land. The spur track was constructed by the railway in the year 1908 under a deed made by T. J. Richardson—the then owner—to the railway company. This deed granted the railway company, its successors and assigns, the right to construct and operate said spur track during the life of a contract between the mill and the railway company, and "any renewal or renewals thereof." The contract between the mill and the railway company provided that the spur track should be operated for a period of five years, and thereafter from month to month until canceled by 30 days' written notice by either party. Under the deed from Richardson the spur track was constructed, and has ever since been operated. Richardson died in the year 1917, and, under partition proceedings instituted by his heirs, the land was sold on salesday in October, 1918, to plaintiff, Casper E. Griffin. Griffin em-

ployed Mr. B. A. Morgan to examine the title. At that time the deed to the right of way had not been placed on record, but Mr. Morgan made inquiry of Mr. E. F. Woodside, president of the mill, and was informed that the deed had been made by Richardson to the railway company, and that this deed was in the possession of the railway company. Mr. Morgan then wrote to Mr. A. W. Anderson, general superintendent of the railway company, and was informed by him that the railway company had the deed made by Richardson, and that it was on record. Mr. Morgan replied, saying that the deed had not been recorded. He did not hear from Anderson for three or four weeks, and, in the meantime, his client paid for the land and received a deed from the Master.

Griffin testified that he paid $3,500 for the land; that he would have given $3,000 or $4,000 more for it if the spur track had not been constructed thereon; that he knew that the track was through the land, but did not know whether it was there rightfully or wrongfully at the time that he bought the property.

At the conclusion of plaintiff's testimony, the Judge granted a nonsuit upon the grounds (1) that the plaintiff had legal notice of the deed made by Richardson; and (2) that, the railway company having entered upon the land with the consent of Richardson, the only remedy was for compensation, and that this would inure only to the benefit of Richardson or his heirs.

The defendant moved to sustain the nonsuit upon two additional grounds, to wit: (1) That the conveyance by Richardson created a fee, determinable upon the conditions set forth in the deed, and that the plaintiff had constructive and actual notice; (2) that under the law, the railway company having the right of condemnation, its appropriation of the land for a right of way would be constructive notice that the land had been appropriated to such purpose. The attorneys for the respondent in their argument, say:

"There are two main questions involved in this appeal, to wit: (1) Whether, at the time of suit the easement of the railway company was still of force; and (2) whether the easement became avoided as to the plaintiff on the ground that he was a purchaser for value without notice."

The appellant bought a tract of land upon which the respondent had constructed and was operating a spur track. The appellant claims that the contract under which the spur track was operated has expired and that the land reverts to him. The respondent claims that there was a contract between the respondent and the Simpsonville Cotton Mills, by which the Simpsonville Cotton Mills agreed to secure for the respondent the right of way now used, and that, it was to continue until either party should give a 30-day notice of discontinuance, and, as no such notice had been given, the easement was still of force; that in the deed to the right of way, the appellant's predecessor in title had acknowledged that he had read said agreement and consented to its terms. No question had been raised as to the identity of the contract between the railway and the mill, and the respondent relies upon the Richardson deed, made in pursuance of the contract.

The Richardson deed construes the agreement between the mill and railway company, and that construction is as follows:

"Whereas, the said Charleston & Western Carolina Rwy. Co., has entered into a contract or agreement with E. F. Woodside for Simpsonville Cotton Mills for the construction and operation of a side or spur track at or near Simpsonville, S. C., which said contract is dated the 19th day of February, 1908, and provides for the operation of said side or spur track for the term of five years, with privilege of renewal to the said party hereinbefore named for a further term of five years."

And the clause in the railway-mill agreement reads:

"Fourteenth. It is further mutually agreed that this

contract shall remain and be in effect for five years after the
date hereof, and thereafter to continue in force and effect
from month to month until terminated by thirty days' no-
tice in writing from either party hereto to the other."

Read these two stipulations together, and the ex-
tended period was limited to another five years.

The respondent contends that the grant of the ease-
ment is still in force. We think that our construction of
the agreement and the deed together shows this position to
be erroneous. Had the parties intended to make the ease-
ment perpetual, they would have said so.

While the respondent stated its position as resting upon
the two grounds hereinbefore recited, it has extended its
position in the argument, and, among other positions taken,
has undertaken to show that, although a spur track be built
to terminate at the place of business of a private enterprise,
it may be clothed with a public use, and that notwithstand-
ing the fact that the industry paid a part of the cost. In
support of this position, it cites *Hairston v. Railway Co.,*
208 U. S., 598; 28 S. Ct., 331; 52 L. Ed., 637; 13 Ann.
Cas., 1008, and *Union Lime Co. v. Railway Co.,* 233 U.
S., 211; 34 S. Ct., 522; 58 L. Ed., 924.

The Hairston Case arose in Virginia. Condemnation
was sought for the purpose of extending the track to an
industrial enterprise, and the owner of the land objected,
upon the ground that it was in furtherance of a private en-
terprise. The owner of the land lost on this issue, con-
demnation was had, and the case finally was taken to the
Supreme Court of the United States on a writ of error.
The last Court held that, while it appeared that eminent
domain could be exercised only for a public use, it must
have been determined below that such was the nature of
the use, and affirmed the judgment below.

In the *Case of Union Lime Company,* there is a statute
expressly permitting the construction and operation of spur
tracks, with the power to acquire a right of way for such

purpose, and the person or firm or corporation to be primarily served thereby may be required to pay the costs of the right of way and construction. That case, therefore, is governed entirely by the statute, which gives the right to condemnation.

The respondent also takes the position that having entered with the consent of the owner, if the appellant has any remedy, it would be by condemnation, and cites a number of authorities. The authorities are not few to the effect that, where a railroad company enters upon land with the consent of the owner, the land cannot afterwards be recovered, but, in a proper case, compensation may be had. These cases apply where the railroad company intended to acquire a permanent right of way for the use of the public, and for some reason, such, for instance, as taking title from the life tenant, or from some other cause, its title had become defective; and counsel for respondent advanced the idea in oral argument before the Court that he did not believe that, in any case such as the case at bar, the railroad company could be deprived of its right to continue to use the land.

In this case, a proper construction of the contract, and the deed made in pursuance of it, shows that it intended to acquire a right of way for a period not exceeding ten years. As the case stood when the nonsuit was granted, the evidence tended to show a dedication of this spur track solely to private use, and the respondent based its right to remain upon the premises upon its deed. The character of the use of the premises and other questions in the case were at issue, and none of the grounds urged by the appellant would warrant a nonsuit. Upon the expiration of the license granted in the deed, the result of the voluntary act of the respondent in accepting the deed raises questions as to its right to remain for a longer time, and no such right exists under the terms of the deed. Whether it can, on the trial of the case on its merits, show that the land in question is

dedicated to public use, and bring itself within the principles laid down in the *Hairston Case,* and within the principles of *Bridges v. Railroad Co.,* 86 S. C., 267; 68 S. E., 551, Ann. Cas., 1912A, 1056, and *Railway Co. v. Colclough,* 89 S. C., 555; 72 S. E., 494, and the other cases cited by the respondent, will depend on the proof at the trial, and cannot be disposed of as a matter of law by granting a nonsuit.

We will not discuss the effect of the operation of the road as being notice of the rights of the railroad company, but as to which it is sufficient to say that if the purchaser had pursued the notice which he had, he would have found the limitation of the respondent in this case to be the limitation set forth in the deed which had been taken in pursuance of the contract with the mill.

The order of nonsuit is reversed, and a new trial is granted.

Reversed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and MARION concur.

MR. JUSTICE COTHRAN did not participate.